IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Income Tax

CLARKE P. MILLER, )
)
            Plaintiff,          )          TC-MD 150358N
)
    v.                          )
)
DEPARTMENT OF REVENUE,          )
State of Oregon,                )
)
            Defendant.          )          **FINAL DECISION**

This Final Decision incorporates without change the court's Decision, entered April 22,

2016. The court did not receive a statement of costs and disbursements within 14 days after its

Decision was entered. *See* TCR-MD 16 C(1).

Plaintiff appeals Defendant's Notice of Deficiency Assessment, dated March 24, 2015,

for the 2011 tax year. A trial was held on January 27, 2016, in the Oregon Tax Courtroom, in

Salem, Oregon. Mick R. Poole (Poole), Oregon Certified Public Accountant, appeared and

testified on behalf of Plaintiff. Plaintiff and Cherie Masneri (Masneri), Plaintiff's manager, each

testified on behalf of Plaintiff. Alex Anderson (Anderson), Tax Auditor, appeared and testified

on behalf of Defendant. Plaintiff's Exhibits 1 through 9 and Defendant's Exhibits A through M

were received without objection.

## I. STATEMENT OF FACTS

Plaintiff testified that he is a sales representative for Pacific Seafood, based in

Clackamas, and has been in that position for 31 years. Masneri testified that she has worked for

Pacific Seafood for 25 years and has managed Plaintiff for the past 10 months. Plaintiff and

Masneri each testified that Plaintiff's official title is "Outside Foodservice Sales Representative."

(*See* Ptf's Ex 2 at 7.) Plaintiff's job duties included "[d]evelop[ing] new customers through

personal sales calls[,]" "[g]enerat[ing] own leads, as well as excellent follow-up on company

FINAL DECISION  TC-MD 150358N                                                                    1

furnished accounts[,]" "[i]nitiat[ing] and control[ling] sales processes with new clients[,]" selling products, negotiating contracts, "[c]reat[ing], maintain[ing], and execut[ing] a successful territory sales plan[,]" and more. (*Id.*) Plaintiff and Masneri each testified that Plaintiff's job description did not include all of Plaintiff's job duties. (*See id.*)

Masneri testified that Pacific Seafood provides distribution and food processing for "center of the plate" items, such as fish and meat. She testified that the market is very competitive and the customers prefer to see, smell, and taste the products. Masneri testified that, ideally, a sales representative would be able to set up appointments, but that is not typically possible. The representative must show up in person and return if the customer is not available. Masneri testified that, as Plaintiff's boss, she wants him "live" in front of the customers. She testified that prices change daily and orders are typically for next day delivery. Masneri testified that, with new customers, the sales representative must do a credit check and complete a new application. She testified that she would like her sales representatives to visit every customer every week, although that is not typically possible.

Plaintiff testified that 90 percent of his customers are restaurants. He testified that he makes the majority of his sales calls in person; competition is very stiff and in-person sales calls are essential. Plaintiff testified that he does not like to call customers ahead of time and prefers the "ambush method" of sales. He testified that he visits restaurants during the slow times of day to make his sales pitch and to provide written information. Plaintiff testified that in-person sales presentations are important to demonstrate new products – for instance, he sells chemical-free scallops on behalf of Pacific Seafood and the difference between that product and competitors' products becomes evident during a cooking and tasting demonstration. Plaintiff testified that, when he is considering a new customer, he has to visit the potential customer to determine if

/ / /

FINAL DECISION  TC-MD 150358N                                                                    2

there is adequate volume. He testified that if a customer wants to pay its invoice during a sales call, he will have to set aside time to collect money owed.

Plaintiff testified that invoices are generated following his sales calls. (*See* Def's Ex I at 29-73 (Plaintiff is "SLM" number 284).) He provided a packet of 44 invoices from six sample weeks requested by Defendant. (*See id.*) The invoices include the date, an itemized order description, and the name and address of the customer. (*See id.*) Plaintiff testified that he enters an order on the same day as the sales call; orders must be submitted by the end of the day. He testified that when he enters an order, it is delivered with the next truck. Plaintiff testified that Pacific Seafood sends four trucks out per week: Monday, Tuesday, Thursday, and Friday. He testified that the invoice dates are the delivery dates, but the order must have been placed by 4:00 p.m. on the day before the invoice date. Plaintiff testified that some orders are placed one week in advance, but not typically more than that. He testified that he has no "standing orders" with restaurants; those do not work with the nature of the supply.

Masneri testified that the average sales representative has between 50 and 120 customers. Plaintiff testified that he has between 65 and 95 customers and generates between $3.5 and $4.5 million in sales for Pacific Seafood. A letter from Plaintiff's employer stated that he "generated sales of $3,065,915 during [its] 2010/2011 fiscal year which ran from Nov 28, 2010 thru Nov 26, 2011." (Ptf's Ex 2 at 1-2.) Plaintiff testified that his employer requires a 10 percent increase in sales each year and he sold $4.74 million "this year."

Plaintiff's sales territory includes many locations in southern Oregon, such as Roseburg, Grants Pass, Medford, and Ashland. (Ptf's Ex 2 at 8.) It also includes Crescent City, California. (*Id.*) A letter from Plaintiff's employer states that Plaintiff's "sales territory stretches throughout his southern Oregon Territory from Sutherlin in the north to Ashland in the south. He can drive over 200 miles per day to perform his primary function as an employee of the Company." (Ptf's

Ex 2 at 1.) Masneri testified that Plaintiff is not limited to the locations in his sales territory; he may go outside those areas to develop new business. She testified that Plaintiff's job duties include "prospecting" new business.

Plaintiff testified that he is required to make a minimum of 12 sales calls per week, but typically makes 25 to 30 sales calls. He testified that his weekly work schedule is Sunday through Friday. Plaintiff testified that he typically works from his home office on Sundays; he plans his week and reviews available supply.[1]

Plaintiff testified that he is required to send weekly activity reports to his employer, detailing any lost customers and identifying targeted customers for new business, as well as highlighting some of his planned sales calls. (*See, e.g.*, Ptf's Ex 3 at 3-8.) He testified that the activity reports list the number of personal presentations made. (*See id.*) Masneri testified that the weekly activity reports are to help Plaintiff organize his intent for the week and are not necessarily a representation of everything that happened in a given week.

A.    *Plaintiff's 2011 Business Mileage*

On his 2011 income tax return, Plaintiff claimed a mileage deduction based on 43,475 business miles. (Ptf's Ex 1 at 7.) Plaintiff testified that his business mileage was 85 percent of his total mileage in 2011. (*See id.*) He testified that his method of calculating business mileage and the 85 percent figure were used by the IRS during an audit of Plaintiff's 2007 return.[2]

---

[1] A letter from Plaintiff's employer states that "[i]t is the Company's intention that [Plaintiff's] home is his principal place of business. The Company does not provide him with a separate office space; his home office is for the convenience of the Company." (Ptf's Ex 2 at 1.) According to his employer, Plaintiff "is not reimbursed for mileage incurred to travel to customers. He receives an annual auto allowance of $3,600 which is included on his Form W-2. The auto allowance does not cover all mileage expenses * * *." (*Id.*)

[2] Plaintiff testified that he has been audited by the IRS three times: in 2004, 2007, and 2010. (*See* Ptf's Ex 8, 9 (IRS correspondence).) He testified that, in 2004, he had a meeting with the IRS at its Medford branch and the IRS reviewed his daily planner, laptop, and customer base. Plaintiff testified that, in 2004, the IRS did not like some of the circuitous routes Plaintiff took to meet with customers, so the IRS made a few adjustments to Plaintiff's mileage. He testified that, in 2007, the IRS allowed 85 percent of Plaintiff's mileage and made a few other adjustments to his return. Plaintiff testified that, in 2010, the IRS made no changes to Plaintiff's return based on similar documents to what Plaintiff provided to Defendant for the 2011 tax year.

Plaintiff provided service records to corroborate his reported 2011 mileage. (*See* Ptf's Ex 3 at 1.) Poole testified that the service records are from close to January 1 and December 31, 2011, but they are not exact. (*See id.*) The service records report Plaintiff's odometer reading was 233,867 on December 5, 2011, and 181,594 on December 19, 2010, for a total of 52,273 miles driven during that time period. (*See id.*) Poole testified that 85 percent of that total mileage is 44,432 miles. (*See id.*) Poole testified that Plaintiff recorded in his daily planner his 2011 starting odometer reading on January 1, 2011, as 184,968. (*See* Ptf's Ex 6 at 1.)

Plaintiff testified that he has used daily planners for the past 10 years and he maintained a daily planner in 2011. (*See* Ptf's Ex 6.) He provided photocopies of his 2011 daily planner, which lists his appointments each day, Monday through Friday. (*Id.*) Plaintiff's daily planner indicates that he took approximately six weeks of vacation in 2011.[3] (*See id.*) Plaintiff testified that he did not provide his complete daily planner to Defendant until shortly before trial due to a misunderstanding regarding what information Defendant wanted.

Plaintiff testified that, in response to Defendant's request, he provided records for six sample weeks identified by Defendant. (*See* Def's Ex I at 3-20.) Those records include lists of customers visited on specific dates within the sample week, along with each customer's address and the number of miles driven per visit. (*See id.* at 3-8.) The records also include a printed list of all of Plaintiff's customers with an "x" mark noting which customers were visited during each sample week. (*See id.* at 9-20.) Plaintiff testified that the record of which customers he visited in a particular week was based upon records kept on his work computer, as well as his daily planner and his weekly activity reports. Plaintiff's total reported business mileage for the six

---

[3] Plaintiff's daily planner reports vacation on the follow dates: Sunday, January 23 through Sunday, January 30; Sunday, March 6 through Sunday, March 13; Sunday, July 24 through Sunday, July 31; Sunday, August 28 through Wednesday, August 31; Thursday, October 13 and Friday, October 14; Sunday, November 20 through Sunday, November 27; Sunday, December 18 through Tuesday, December 20; and Thursday, December 22 through Monday, December 26. (Ptf's Ex 6 at 4-5, 10-11, 30-31, 36, 42, 47-48, 52-53.)

sample weeks were: 657, 698, 702, 703, 733, and 752. (*See id.* at 3-8.) The average number of business miles driven for those six weeks was 708 miles, rounded.

Plaintiff also provided a document he identified as his typical monthly schedule in 2011. (Ptf's Ex 3 at 2.) The schedule is divided into four weeks and lists the cities visited on each day of the week (Monday through Friday), as well as the total miles driven per day. (*See id.*) The schedule reports 3,601 miles driven per month, for a 2011 annual total of 43,212 miles. (*See id.*) Plaintiff testified that, for the most part, he followed his route consistently in 2011. He testified that he sometimes had to visit the same location multiple times in a week due to multiple customers in that particular area (*e.g.*, Medford) and because he had to accommodate customers' schedules. (*See id.*) Plaintiff testified that he visited some customers several times per week; generally, the more money a customer spent the more times he visited that customer. In addition to his sales calls, Plaintiff testified that he is required to attend eight sales meeting each year in Clackamas; previously it was one meeting per month.

Anderson testified that he does not think Plaintiff met the substantiation requirements of IRC section 274(d). He testified that he does not think Plaintiff had a regular sales route in 2011. Anderson testified that the document identified by Plaintiff as his typical monthly sales route was created after the fact; it was not contemporaneously created. (*See* Def's Ex C at 2.) Anderson testified that the logs for six sample weeks that he received from Plaintiff in September 2015 were not contemporaneous records. (*See* Def's Ex I at 9-20.) He testified that he did not have an opportunity to see Plaintiff's source material. Anderson testified that, in October 2015, Plaintiff provided additional logs for the six sample weeks, but the logs did not include mileage calculations. (*See* Def's Ex L.) He testified that, in December 2015, Plaintiff provided photocopies of his daily planner for the six sample weeks. (*See* Def's Ex M.)

/ / /

B.    *Plaintiff's Schedule K-1 Deduction*

Plaintiff testified that he received a 2011 Schedule K-1 Form 1041 from the Estate of Faye J. Miller reporting a deduction of $13,184.  (Ptf's Ex 7 at 1.)  He testified that he originally reported a Schedule A deduction of $12,720 based on an estimated Schedule K-1 because he had not yet received the actual Schedule K-1 when he filed his return.  (*See id.* at 3; Ex 1 at 5.)  Plaintiff requested that the court revise his 2011 Schedule K-1 deduction from $12,720 to $13,184.  Defendant took no position on Plaintiff's request and offered no rebuttal evidence.

## II.  ANALYSIS

The primary issue presented is whether Plaintiff provided adequate substantiation for his reported business mileage of 43,475 miles, based upon which he claimed a deduction of $23,139 on his 2011 Schedule A for unreimbursed employee expenses.  A secondary issue is whether Plaintiff is entitled to an additional Schedule A deduction based on his 2011 Schedule K-1 reporting a deduction of $13,184, where Plaintiff originally reported a deduction of $12,720.

The Oregon Legislature intended to "[m]ake the Oregon personal income tax law identical in effect to the provisions of the Internal Revenue Code relating to the measurement of taxable income of individuals, estates and trusts, modified as necessary by the state's jurisdiction to tax and the revenue needs of the state[.]"  ORS 316.007(1).[4]  "Any term used in this chapter has the same meaning as when used in a comparable context in the laws of the United States relating to federal income taxes, unless a different meaning is clearly required or the term is specifically defined in this chapter."  ORS 316.012.   On the issues presented in this case, "Oregon law makes no adjustments to the rules under the Internal Revenue Code (IRC) and therefore, federal law governs the analysis."  *See Porter v. Dept. of Rev.*, 20 OTR 30, 31 (2009).

/ / /

---

[4] The court's references to the Oregon Revised Statutes (ORS) are to 2009.

Deductions are "a matter of legislative grace" and taxpayers bear the burden of proving their entitlement to the deductions claimed. *INDOPCO, Inc. v. Comm'r*, 503 US 79, 84, 112 S Ct 1039, 117 L Ed 2d 226 (1992). "In all proceedings before the judge or a magistrate of the tax court and upon appeal therefrom, a preponderance of the evidence shall suffice to sustain the burden of proof. The burden of proof shall fall upon the party seeking affirmative relief[.]" ORS 305.427. Plaintiff must establish his claim "by a preponderance of the evidence[,] which "means the greater weight of evidence, the more convincing evidence." *Feves v. Dept. of Revenue*, 4 OTR 302, 312 (1971). "[I]f the evidence is inconclusive or unpersuasive, the taxpayer will have failed to meet his burden of proof * * *." *Reed v. Dept. of Rev.*, 310 Or 260, 265, 798 P2d 235 (1990). "In an appeal to the Oregon Tax Court from an assessment made under ORS 305.265, the tax court has jurisdiction to determine the correct amount of deficiency * * *." ORS 305.575.

A.      *Unreimbursed Employee Expenses: Mileage*

IRC section 162(a) allows a deduction for "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business[.]" "To be 'necessary[,]' an expense must be 'appropriate and helpful' to the taxpayer's business. * * * To be 'ordinary[,]' the transaction which gives rise to the expense must be of a common or frequent occurrence in the type of business involved." *Boyd v. Comm'r*, 83 TCM (CCH) 1253, WL 236685 at *2 (2002) (internal citations omitted). IRC section 262 generally disallows deductions for "personal, living, or family expenses" not otherwise expressly allowed under the IRC.

Taxpayers must be prepared to produce "any books, papers, records or memoranda bearing upon [any] matter required to be included in the return[.]" ORS 314.425(1); *see also Gapikia v. Comm'r*, 81 TCM (CCH) 1488, WL 332038 at *2 (2001) ("Taxpayers are required to maintain records sufficient to substantiate their claimed deductions"). Generally, if a claimed

business expense is deductible, but the taxpayer is unable to substantiate it fully, the court is permitted to make an approximation of an allowable amount. *Cohan v. Comm'r*, 39 F2d 540, 543-44 (2nd Cir 1930). The estimate must have a reasonable evidentiary basis. *Vanicek v. Comm'r*, 85 TC 731, 743 (1985). IRC section 274(d) supersedes the *Cohan* rule and imposes more stringent substantiation requirements for travel, meals, entertainment, gifts, and listed property under IRC section 280F(d)(4)(A)(i). Treas Reg § 1.274-5T(a).

Ordinary and necessary business travel expenses, including transportation, are deductible under IRC section 162(a), but are subject to the strict substantiation requirements of IRC section 274(d). Taxpayers must substantiate such expenses "by adequate records or by sufficient evidence corroborating the taxpayer's own statement" the amount, time, place, and business purpose of the travel. IRC § 274(d); Treas Reg 1.274-5T(b)(2).

"To meet the 'adequate records' requirement of [IRC] section 274(d), a taxpayer shall maintain an account book, diary, log, statement of expense, trip sheets, or similar record * * * and documentary evidence * * * which, in combination, are sufficient to establish each element of an expenditure or use * * *." Treas Reg 1.274-5T(c)(2)(i). "A contemporaneous log is not required, but a record of the elements of an expenditure or of a business use of listed property made at or near the time of the expenditure or use, supported by sufficient documentary evidence, has a high degree of credibility * * *." Treas Reg 1.274-5T(c)(1).

The Treasury Regulations specifically address the use of sampling to satisfy the strict substantiation requirements. Subject to an exception not applicable in this case,

> "a taxpayer may maintain an adequate record for portions of a taxable year and use that record to substantiate the business/investment use of listed property for all or a portion of the taxable year if the taxpayer can demonstrate by other evidence that the periods for which an adequate record is maintained are representative of the use for the taxable year or a portion thereof."

Treas Reg 1.274-5T(c)(3)(ii)(A). The Regulations provide several examples, including:

"**Example 1.**  A, a sole proprietor and calendar year taxpayer, operates an interior decorating business out of her home.  A uses an automobile for local business travel to visit the homes or offices of clients, to meet with suppliers and other subcontractors, and to pick up and deliver certain items to clients when feasible.  There is no other business use of the automobile but A and other members of her family also use the automobile for personal purposes.  A maintains adequate records for the first three months of 1986 that indicate that 75 percent of the use of the automobile was in A's business.  Invoices from subcontractors and paid bills indicate that A's business continued at approximately the same rate for the remainder of 1986.  If other circumstances do not change (e.g., A does not obtain a second car for exclusive use in her business), the determination that the business/investment use of the automobile for the taxable year is 75 percent is based on sufficient corroborative evidence."

Treas Reg 1.274-5T(c)(3)(ii)(C) (emphasis in original).

Plaintiff deducted daily transportation expenses associated with driving between his home office and the locations of his customers.[5]  Defendant disallowed all of Plaintiff's claimed transportation expenses based on lack of adequate substantiation.  (*See* Def's Ex G.)

Plaintiff calculated his 2011 business mileage (43,475 miles) based on 85 percent of his total mileage in 2011.  Plaintiff selected 85 percent based on an IRS audit for a prior tax year in which the IRS determined Plaintiff's business mileage was 85 percent of his total mileage.  In *Thomas v. Comm'r*, 72 TCM (CCH) 570, WL 482092 at *2 (1996), the "petitioners contend[ed] that 82 percent represents a sampling of mileage from a prior year and is sufficient evidence, arguing that the regulations do not mandate that each taxable year be treated independently."  The court rejected that evidence, explaining:

/ / /

/ / /

---

[5] Generally, the expense associated with traveling between one's home and work location would be considered a nondeductible commuting expense.  Rev. Rul 99-7, 1999-1 CB 361 describes several exceptions to that general rule, one of which is when "a taxpayer's residence is the taxpayer's principal place of business within the meaning of [IRC] § 280A(c)(1)(A) * * *."  Plaintiff testified that he works from his home office on Sundays and provided a letter from his employer stating that "[i]t is the Company's intention that [Plaintiff's] home is his principal place of business.  The Company does not provide him with a separate office space; his home office is for the convenience of the Company."  (Ptf's Ex 2 at 1.)  Defendant did not challenge Plaintiff's claim or present any rebuttal evidence.  Thus, the court accepts that Plaintiff's residence was his principal place of business.

> "The language of the regulations is clear and does not permit estimation of current business use by reference to a prior year. In addition, there is no indication on the record that the 82 percent was based on adequate records or any evidence that the prior year was representative of the year at issue."

*Id.* As in *Thomas*, the court cannot accept Plaintiff's calculation of 85 percent business use based on a percentage of business use from a prior tax year.

Fortunately, Plaintiff did not rely solely upon the 85 percent business use calculation from the IRS audit of a prior tax year. Plaintiff presented additional evidence of his business mileage, including: a daily log detailing the dates that Plaintiff worked and the customers he called upon, and six sample weeks for which he provided a more detailed mileage log, a list of customers called upon, sales activity reports, and invoices generated that week. Plaintiff also provided evidence of his total 2011 mileage from service records and of his total 2011 sales volume from Masneri's testimony and his employer's letter. The question becomes whether those records are sufficient to establish Plaintiff's 2011 business mileage.

The court begins with several preliminary observations. First, the court finds that Plaintiff drove in excess of 50,000 miles in 2011, as established by his service records. Second, the court finds that Plaintiff had between 65 and 95 customers in 2011, as established by his credible testimony and the customer lists he provided for six sample weeks. Third, the court finds that Plaintiff's work required him to travel to numerous locations in southern Oregon to make personal sales calls upon his customers. That is established by the credible testimony of Plaintiff and Masneri, as well as significant documentary evidence. Fourth, the court finds that Plaintiff generated at least $3 million in sales for Pacific Seafood in 2011, as established by his credible testimony and the letter from his employer. Those observations lead to the conclusion that Plaintiff drove a significant number of miles for his business in 2011.

The court also observes that Plaintiff's records are not perfect. Plaintiff's daily planner did not state the number of miles driven per trip or per day and, in fact, Plaintiff provided no

record from which the court can determine the precise number of business miles he drove each day in 2011. However, the Treasury Regulations allow for sampling in certain circumstances and Plaintiff provided a sample of six weeks selected by Defendant for which he precisely calculated his business mileage. The records Plaintiff provided for those sample weeks were either contemporaneous or prepared based on contemporaneous records.[6] The court finds that Plaintiff's sample weeks are representative of his total business mileage in 2011. Even though Plaintiff had to vary his sales route periodically to accommodate customers' schedules, Plaintiff generally had an established sales territory, customer base, and monthly sales route.

During the six sample weeks that Plaintiff provided, he drove between 657 and 752 miles per week for business, with an average of 708 miles per week, rounded. Plaintiff's daily planner indicates that he took six weeks of vacation in 2011, and he worked the other 46 weeks. Based on Plaintiff's average number of business miles and 46 weeks of work, Plaintiff is allowed a mileage deduction based 32,568 business miles driven in 2011.

B.      *Deduction Reported on Schedule K-1*

Plaintiff requested that the court allow a revised Schedule A deduction for "Excess Deduction from K-1." (*See* Ptf's Ex 1 at 5.) On his original 2011 Schedule A, Plaintiff reported a deduction of $12,720. (*See id.*) Plaintiff testified that amount was based on an estimated Schedule K-1 because, at the time he filed his 2011 income tax return, he had not yet received the actual 2011 Schedule K-1. He provided the actual 2011 Schedule K-1 from the "Estate of Faye J. Miller" reporting "final year deductions" of $13,184. (Ptf's Ex 7 at 1.) Defendant took no position on Plaintiff's requested revision and presented no rebuttal evidence on the issue. The court finds that Plaintiff's revised Schedule A deduction of $13,184 is allowed.

_____

[6] Based on Plaintiff and Masneri's testimony, Plaintiff's weekly activity reports and the sales invoices were contemporaneous records, and the customer lists and mileage calculations were based on contemporaneous records including Plaintiff's daily planner and business records kept on his work computer.

## III. CONCLUSION

After careful consideration, the court finds that, for the 2011 tax year, Plaintiff is allowed a Schedule A deduction for unreimbursed employee expenses based on 32,568 business miles, and a revised deduction of $13,184 based on his 2011 Schedule K-1. Now, therefore,

IT IS THE DECISION OF THIS COURT that, for the 2011 tax year, Plaintiff is allowed a Schedule A deduction for unreimbursed employee expenses based on 32,568 business miles, and a revised deduction of $13,184 based on his 2011 Schedule K-1.

Dated this ____ day of May 2016.

 

 

ALLISON R. BOOMER
MAGISTRATE

*If you want to appeal this Final Decision, file a complaint in the Regular Division of the Oregon Tax Court, by __mailing__ to: 1163 State Street, Salem, OR 97301-2563; or by __hand delivery__ to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your complaint must be submitted within __60__ days after the date of the Final Decision or this Final Decision cannot be changed. TCR-MD 19 B.*

*This document was filed and entered on May 11, 2016.*